UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
        :
MERIDA CAPITAL PARTNERS III LP,        :
        :
        Plaintiff,        :        25-CV-01235 (JAV)
        :
        -v-        :        <u>OPINION AND ORDER</u>
        :
JACOB FERNANE, et al.,        :
        :
        Defendants.        :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On April 22, 2025, Defendants Jacob Fernane, Liqueous LP ("Liqueous"), and Pacific Lion LLC ("Pacific Lion") (collectively, "Defendants") filed a Motion to Stay Discovery in light of the pending Motion to Compel Arbitration and Motion to Dismiss, or in the alternative, Motion to Transfer the Case to the United States District Court for the Southern District of Florida (ECF No. 29). ECF No. 35 ("Defs. Mot. to Stay Discovery"). Two days later, on April 24, 2025, Defendants filed a Motion to Quash Ten Third Party Discovery Subpoenas, alleging, *inter alia*, that the third-party subpoenas issued by Plaintiffs to various financial institutions ("Subpoenas") are vastly overbroad and seek irrelevant and private information. ECF No. 36 ("Defs. Mot. to Quash").

For the reasons that follow, the Motion to Stay Discovery is GRANTED IN PART AND DENIED IN PART, and the Motion to Quash the Third Party Subpoenas is DENIED.

## BACKGROUND

Plaintiff Merida Capital Partners III, LP ("Plaintiff" or "Merida") initiated this action on February 11, 2025, alleging that Defendants engaged in "securities fraud, common law fraud and fraudulent inducement, arising from a scheme in which Defendant Fernane duped Plaintiff into surrendering valuable publicly-traded securities through a sham securities repurchase agreement." ECF No. 39 ("Pl. Opp. to Mot. to Stay Discovery") at 1 (citing ECF No. 11 ("Compl.") ¶¶ 20-30)).

Plaintiff is a New York based private equity fund which sought to raise capital in early 2023. Compl., ¶ 16. As part of Plaintiff's efforts to raise capital, the then-Chief Operations Officer ("COO") connected with two brokers who introduced the COO to Defendant Fernane and "represent[ed] that Fernane, through Pacific Lion, was a legitimate provider of securities lending services." *Id.*, ¶ 17. Plaintiffs claim that a "financing arrangement was quickly negotiated between Merida on the one hand and Fernane and Pacific Lion on the other hand." *Id.*, ¶ 18. According to Plaintiff, Defendant Fernane established a fraudulent scheme using alter egos with the intention of "defraud[ing] Merida of no less than $3.2 million in cash and securities over the next year." *Id.*, ¶ 19.

On June 26, 2023, Plaintiff and Defendant Fernane, on behalf of Pacific Lion, executed a Stock Repurchase Agreement. *Id.*, ¶ 20. The Agreement was amended (the "Amendment") by Merida and Pacific Lion on July 13, 2023, "as a means of confirming the final closing values, net proceeds and the premium payment schedule." *Id.*, ¶ 20 (quotation marks omitted). "The Stock Repurchase Agreement

and the Amendment are together referred to as the Beneficial Ownership Retention Repurchase Option ("BORRO")." *Id.*

According to Plaintiff, the BORRO was a fraudulent contract, which was used as a tool to steal securities from Plaintiff. The terms of the BORRO allowed Pacific Lion to temporarily "purchase" 415,000 shares of Green Thumb Industries Inc. ("GTI") (the "Shares") from Merida for a purchase price of $1,612,275, which was 50% of the Shares' actual value. *Id.*, ¶ 21. The Shares would be placed into a custodial account created by Merida and Pacific Lion, controlled by Defendant Fernane, who would be granted full control over the account and broad authority to execute transactions. *Id.* Pacific Lion's broad authority, however, was subject to a restriction that any effectuated transactions were only permitted if they involved borrowed shares held in a separate account established by Pacific Lion. *Id.* Merida then opened a brokerage account and transferred the Shares. *Id.*, ¶ 26. Plaintiff claims that, in violation of the restriction in the BORRO, and unbeknownst to them, Defendant Fernane directed the brokerage to "immediately process[ ] a borrow transaction of 415,000 GTI shares from Merida's Lazarus account to another account in the name of "Liqueous LP." *Id.*, ¶ 27.

In exchange for Merida retaining beneficial ownership of and legal title to the Shares, with the option to "repurchase" the Shares upon the BORRO's expiration, "Merida agreed to make four equal premium payments (essentially interest payments) to Pacific Lion during the term of the BORRO, each in the amount of $13,099 for a sum of $52,398." *Id.*, ¶ 22. Merida alleges that Defendant Fernane

3

"falsely represented" that Merida could "exercise its 'option' to repurchase the Shares by providing written notice of its election to Pacific Lion within thirty days of the expiration of the BORRO." *Id.*, ¶ 23.

On June 14, 2024, Plaintiff sought to exercise its contractual option to repurchase the Shares. *Id.*, ¶ 31. On or about July 9, 2024, "Merida's CFO returned the executed transfer instruction and provided confirmation that the purchase price of $1,625,374 had been wired to Pacific Lion." *Id.*, ¶ 39. Upon receipt of the repurchase payment, Plaintiff alleges that Defendant Fernane became uncommunicative and evasive. *Id.*, ¶ 41. Plaintiff cites several instances in which it reached out to Defendant Fernane to obtain the Shares—after already making the repurchase payment—but received no timely response, with Defendant Fernane often taking days or even weeks to reply. *Id.*, ¶¶ 42-43, 46, 49-50, 52-53, 57, 59, and 68.

Finally, on November 18, 2024, Merida's counsel sent a letter to Defendant Fernane demanding confirmation that Defendant Fernane "still held the Shares and evidence of concrete steps taken to effectuate return of the Shares before November 25." *Id.*, ¶ 91. Merida's counsel admonished Defendant Fernane for his repeated delays and failure to return the shares, claiming that these tactics were employed to deprive Merida of the Shares and funds, and warned Defendant Fernane that noncompliance would result in Merida seeking to enforce its rights to recover them. *Id.* In response, on November 25, 2024, Defendant Fernane's

4

counsel, Robert Heim of Tarter Krinsky & Drogin LLP, contacted Merida's General Counsel directly. *Id.*, ¶ 92.

During these conversations, Mr. Heim, purporting to be speaking on behalf of Liqueous, "immediately cited to provisions of the BORRO purporting to require disputes to be submitted to binding arbitration in Fort Lauderdale, Florida." *Id.*, ¶ 93; *see* ECF No. 29-3 ("BORRO Agreement), § 5.2. The arbitration agreement located in the disputed BORRO is the subject of Defendants' pending Motion to Compel Arbitration, Dismiss this Action with Prejudice, or, in the alternative, Transfer this Matter to the United States District Court for the Southern District of Florida to Rule on Defendants' Motion to Compel Arbitration and Staying this Action. ECF No. 29 ("Motion to Compel Arbitration" or "Defs. Mot. to Compel Arb."). In Defendants' motion, which was filed on April 7, 2025, Defendants argue, *inter alia*, that pursuant to Section 5.2 of the BORRO, any dispute in this matter should be arbitrated because the BORRO contains a clear binding arbitration clause.

Plaintiff alleges that, throughout the exchanges between Mr. Heim and Merida, Mr. Heim made only insincere attempts to return the Shares. Compl., ¶ 96. This included contacting the transfer agent to transfer the Shares to Merida, who responded that they could not find an account matching the name or address provided by Mr. Heim. *Id.*

Overall, Plaintiff claims that Defendant Fernane was successful in defrauding Merida through the use of his alter egos, Pacific Lion and Liqueous. *Id.*,

¶¶ 97-98.  Defendant Fernane is the manager of Pacific Lion and a principal of Liqueous, which Plaintiff claims were organized as "instrument[s] of his fraudulent schemes" to shield him from alleged wrongful conduct.  *Id.*  Plaintiff further alleges that Pacific Lion and Liqueous were "merely interchangeable alter egos of Fernane," explaining that he used Pacific Lion to enter the BORRO but "proceeded immediately to transfer the Shares to an account in the name of Liqueous."  *Id.*, ¶ 99.  Essentially, Plaintiffs assert that Defendant Fernane exercised control over both "Liqueous and Pacific Lion in conjunction to transfer funds and dump shares in furtherance of his fraudulent schemes and other wrongful conduct."  *Id.*, ¶ 98.

On April 14, 2025, one week after Defendants filed their Motion to Compel Arbitration, Plaintiff served ten third-party subpoenas on financial institutions. Defs. Mot. to Quash at 1.  The Subpoenas request:

1. For the time period January 1, 2023 to present, all documents and communications exchanged with or concerning Jacob Fernane, Pacific Lion LLC or Liqueous LP, including but not limited to emails to or from the email addresses jacob@pacificlion.llc, jacob@liqueous.com and jacobfernane@gmail.com; account information; "know your customer" documentation; stock orders; account statements and custody statements.

2. For the time period January 1, 2023 to present, all monthly account statements and transaction history for any account held by or for the benefit of Jacob Fernane, Pacific Lion LLC or Liqueous LP.

Defs. Mot. to Quash, Ex. A (the "Subpoenas").

Now before the Court is Defendants' motion to stay discovery pending the resolution of their Motion to Compel Arbitration, and to quash the Subpoenas. Defendants argue that discovery should be stayed to avoid subjecting Defendants to

6

the undue burden of engaging in voluminous discovery. Defs. Mot. to Stay Discovery at 1. Defendants also argue that the Subpoenas should be quashed because they are overbroad and seek irrelevant information. Defs. Mot. to Quash at 1. Plaintiff, in response, argues that a delay in discovery would be severely prejudicial because it would permit Defendants to dissipate assets and reduce the chances that they will be able to track the flow of transfers and recover their stolen shares and funds. Pl. Opp. to Mot. to Stay Discovery at 3. Plaintiff also asserts that Defendants have no standing to object to the Subpoenas and that the requested information is relevant and narrowly tailored. ECF No. 40 ("Pl. Opp. to Mot. to Quash") at 2-3.

## DISCUSSION

### I.    A Partial Stay of Discovery is Warranted in this Action

"Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke*, No. 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (citation omitted) (granting a stay of discovery pending an arbitration). The Court finds that a partial stay of discovery is warranted in light of the pending Motion to Compel Arbitration.

In evaluating whether good cause exists to stay discovery, courts generally apply a three-factor test: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Oestreicher v. Equifax Information Servs., LLC*, 2023 WL 3819378, at *1 (E.D.N.Y. June 5, 2023). Courts often differentiate between applications for a stay

7

of discovery made in connection with motions to compel arbitration and motions to dismiss, however. That is, in cases where "a party seeks a discovery stay pending a motion to compel arbitration, courts [in this Circuit] have stayed without considering the three-factor test." *Id.* (citations omitted); *see also Intertec Contracting Turner Steiner Int'l., S.A.*, 98-CV-9116 (CSH) 2001 WL 812224, at *7 (S.D.N.Y. July 18, 2001) (noting general practice of district courts to stay discovery while a motion to compel arbitration is pending).

Accordingly, "a stay pending a motion to compel arbitration should be granted absent compelling reasons to deny it." *Alvarez v. Experian Info. Solutions, Inc.*, No. 2:19-CV-03343 (JS) (JMW), 2021 WL 2349370, at *2 (E.D.N.Y. June 7, 2021). "While a stay of discovery pending the decision on a threshold arbitration issue is by no means automatic, it serves to help prevent duplicative and inefficient litigation." *Marsh & McLennan Agency LLC v. Williams*, No. 22 Civ. 8920 (JPC), 2023 WL 2242074, at *2 (S.D.N.Y. Feb. 27, 2023) (citation omitted).

Even though the Court need not apply the three-factor test, if applied here, the three factors favor at least a partial stay of discovery. The Court does not opine on the merits of the pending Motion to Compel Arbitration, but the Court recognizes that there are substantial arguments that a valid arbitration clause exists. In terms of the second factor, the breadth of discovery is likely voluminous. As it stands now, Plaintiff is in the process of obtaining information from ten entities via third-party subpoenas. If discovery is not stayed, the parties could engage in

8

expensive litigation which could be rendered moot if the Court grants the Motion to Compel Arbitration.

The last factor, which considers the prejudice a plaintiff may suffer, weighs in favor of granting a partial stay rather than a complete stay. This litigation is in its early stages. Indeed, Plaintiff recently filed its Motion for Leave to File its First Amended Complaint, a fact favorable to Defendants' request for a stay. On the other hand, the Court is mindful of Plaintiff's allegations that they have been the victims of a fraud, and that Defendants have already taken steps to dissipate funds to prevent the recovery of their property. Pl. Opp. to Stay Discovery at 1-3. Moreover, the Court agrees with Plaintiff that there is no burden to Defendants from continued non-party discovery. *Id.* at 3-4.

The Court, therefore, finds that Plaintiff's proposal that only party discovery be stayed, and that Plaintiff be permitted to continue to pursue discovery from third parties during the pendency of the Motion to Compel Arbitration strikes the right balance. This middle-ground approach allows the Plaintiff to secure the documents necessary to move the case forward, while sparing the Defendants the burden of dealing with the full-scope of discovery that is required in a case proceeding on a standard track.

## II. Motion to Quash the Third-Party Subpoenas

In their Motion to Quash, Defendants argue that the subpoenas are overbroad and seek irrelevant information, *see* Def. Mot. to Quash at 4, and that the subpoenas "seek financial records that implicate the Defendants' personal privacy

9

interest[s]," *id.* at 3.[1]  Federal Rule of Civil Procedure 45(d)(3) governs motions to quash third-party subpoenas.  When considering a motion to quash under Rule 45(d)(3) brought by a party to the litigation, the Court engages in a two-part inquiry.  First, the Court must determine whether the movant has met its burden of establishing standing.  Second, if the movant has standing to challenge the subpoena, the Court then evaluates the merits of the motion, and in particular whether the protected interest asserted by the movant is outweighed by the probative nature of the information sought.  *See Adomni, Inc. v. CT Media, LLC*, No. 23 CIV. 10338 (DEH), 2024 WL 4981510, at *3 (S.D.N.Y. Nov. 19, 2024). Applying that test here, Defendants' motion to quash the Subpoenas fails on the merits.

### A. Defendants Have Standing to Move to Quash the Subpoenas

Defendants have sufficiently established standing to bring a motion pursuant to Rule 45(d)(3) on the grounds that their private financial information is implicated.  In general, only the recipient of a subpoena may move to quash a third-party subpoena.  *Gilead Sciences, Inc. v. Khaim*, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024) (citing *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) (holding that non-recipient of a subpoena could not challenge the subpoena for relevancy or undue burden)).  "A

---

[1]  Defendants also seek a protective order under Rule 26(c) to protect them "from annoyance, embarrassment, oppression, or undue burden and expense." Def. Mot. to Quash at 4.  For the reasons set forth herein, the motion for a protective order is likewise denied.

party may nonetheless object to a subpoena issued to a non-party if the objecting party claims some personal right, real interest in, or privilege concerning the documents at issue." *Id.* (citing *Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009)). In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than "a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.,* No. 13-CV-1654(RA)(HBP), 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (citation omitted).

"Courts in this Circuit have recognized a party's privacy interest in banking and financial records can be sufficient to confer standing to move to quash a subpoena directed at the records' production." *U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-01093 (CSH), 2018 WL 2172713, at *8 (D. Conn. May 10, 2018) (collecting cases). The subpoenas at issue seek, *inter alia*, account statements, account information, communications between the financial institutions and Defendants, and transaction history. Accordingly, Defendants have standing to move to quash the subpoenas in order to protect their confidential information.

### B. Defendants' Motion to Quash the Subpoenas Fails on the Merits

Although Defendants have standing to bring the motion, they do not have standing "to challenge the [S]ubpoena[s] on the independent grounds of undue burden or relevance." *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202–03 (S.D.N.Y. 2023). Instead, Defendants can only raise "the relevance of the evidence sought by a subpoena for purposes of balancing the relevance of the information sought against the litigant's protected

11

interest." *Id.* at 203; *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD) (SN), 2023 WL 4447869, at *11 (S.D.N.Y. July 11, 2023) ("Because ARB's standing is based on its privacy interests, the Court does not apply the typical 'relevancy, burden, or proportionality' standards to its motion."); *Refco*, 2014 WL 5420225, at *6 ("[T]he next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests asserted.") (cleaned up)).

Defendants, as the movants, have the burden of establishing the weight of their privacy interest. Yet other than the conclusory statement that the Subpoenas seek financial records, Defendants have offered no details from which the strength of their privacy interest can be ascertained. Defendants have not explained, for example, if they have accounts at the institutions that received the Subpoenas, the nature or number of any such accounts, whether the accounts or communications reflect transactions beyond those at issue in this litigation, and, if so, why such information is particularly confidential or sensitive.

In contrast, Plaintiff has explained how the requested information is relevant to its allegations involving Fernane's "fraudulent scheme" and "shell game," Pl. Opp. to Mot. to Quash at 3, and the allegations that Defendant Liqueous and Pacific Lion are mere alter egos of Fernane. The Complaint alleges, for example, that "Fernane has exerted his control over Liqueous and Pacific Lion in conjunction to transfer funds and dump shares in furtherance of his fraudulent schemes" and that he siphoned funds from both entities and commingled their funds with his personal

12

accounts. Compl., ¶¶ 97-99. The transfer of company funds for personal use and the intermingling of assets are both relevant factors in an alter ego analysis. *See, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134-35 (2d Cir. 1997). Account and transaction records from Fernane, Liqueous, and Pacific Lion would be relevant to this inquiry.

Moreover, Plaintiff's requests are sufficiently tailored. Though the Subpoena asks for "any" and "all" information, the request is narrowed by the persons, entities and time frame at issue. The Court, therefore, finds no reason to quash the Subpoenas or issue a protective order pursuant to Rule 26(c).

## CONCLUSION

Accordingly, the Motion to Stay Discovery is GRANTED IN PART AND DENIED IN PART, and the Motion to Quash the Third Party Subpoenas is DENIED. The Clerk of Court is directed to terminate ECF Nos. 35 and 36.

SO ORDERED.

Dated: May 30, 2025
      New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

13