UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MERIDA CAPITAL PARTNERS III LP,

                          Plaintiff,                    25-CV-01235 (JAV)

            -v-                                  OPINION AND ORDER

JACOB FERNANE, PACIFIC LION LLC,
LIQUEOUS LP, "ABC CORP." and JOHN DOES
1-3,

                         Defendants.
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On April 7, 2025, Defendants Jacob Fernane, Liqueous LP ("Liqueous"), and Pacific Lion LLC ("Pacific Lion") (collectively, "Defendants") filed a motion seeking to enforce the arbitration clause contained in the stock repurchase agreement underlying this dispute. ECF No. 29. Pursuant to that agreement, the parties agreed that any dispute arising under the contract would be subject to binding arbitration in Fort Lauderdale, Florida. Accordingly, Defendants move to compel arbitration and dismiss this case. In the alternative, Defendants request that this Court transfer this matter to the United States District Court for the Southern District of Florida to compel arbitration. For the reasons that follow, the motion to transfer this case to the United States Court for the Southern District of Florida is GRANTED.

## BACKGROUND

Plaintiff Merida Capital Partners III, LP ("Plaintiff" or "Merida") initiated this action on February 11, 2025, alleging that Defendants engaged in securities fraud, common law fraud and fraudulent inducement arising from a scheme in which Defendant Fernane "duped" Plaintiff into surrendering valuable publicly-traded securities through a sham securities repurchase agreement, then pocketing the $1.625 million Merida paid as the repurchase price without returning those securities. ECF No. 11 ("Compl.") ¶¶ 1-6.

Plaintiff is a New York based private equity fund which sought to raise capital in early 2023. Compl., ¶ 16. Defendant Fernane, through Pacific Lion, held themselves out as legitimate providers of securities lending services. *Id.*, ¶ 17. On June 26, 2023, Plaintiff and Defendant Fernane, on behalf of Pacific Lion, executed a Stock Repurchase Agreement (the "Agreement"). *Id.*, ¶ 20. The Agreement was amended (the "Amendment") by Merida and Pacific Lion on July 13, 2023, "as a means of confirming the final closing values, net proceeds and the premium payment schedule." *Id.*, ¶ 20 (quotation marks omitted). The Agreement and the Amendment are together referred to as the Beneficial Ownership Retention Repurchase Option ("BORRO").

Section 5.2 of the BORRO provides, in relevant part:

> Arbitration. Any dispute, claim, or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation, or validity thereof, shall be determined by binding arbitration in the State of Florida, in accordance with the then-current

> Commercial Arbitration Rules of the American Arbitration Association (AAA) by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, by the AAA in accordance with its rules. The arbitration shall be held in Fort Lauderdale, Florida, unless the parties agree to a different location. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
>
> The arbitrator shall have the authority to award any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, the issuance of an injunction, the award of specific performance, or the award of punitive damages. The arbitrator's decision shall be final and binding on the parties, and may be appealed only on the grounds set forth in the Florida Arbitration Code. The prevailing party in the arbitration shall be entitled to recover its reasonable attorneys' fees and costs, as determined by the arbitrator.
>
> The parties acknowledge and agree that this arbitration provision is a material inducement to enter into this Agreement, and each party represents and warrants that it has consulted with legal counsel (or waived its right to do so) with respect to this arbitration provision, understands its terms, and agrees to be bound by it. The parties further agree that this arbitration provision shall be severable from the rest of the Agreement, and that if any portion of this arbitration provision is held to be unenforceable, the remainder of the arbitration provision shall remain in full force and effect.

ECF No. 29-3, § 5.2.

According to Plaintiff, the BORRO was a fraudulent contract, which was used as a tool to steal securities from Plaintiff. The terms of the BORRO allowed Pacific Lion to temporarily "purchase" 415,000 shares of Green Thumb Industries Inc. (the "Shares") from Merida for a purchase price of $1,612,275, which was 50% of the

Shares' actual value. Compl., ¶ 21. The Shares were to be placed into a custodial account created by Merida; Pacific Lion, controlled by Defendant Fernane, would be granted full control over the account and broad authority to execute transactions. *Id.* Pacific Lion's broad authority, however, was subject to a restriction that any effectuated transactions were only permitted if they involved borrowed shares held in a separate account established by Pacific Lion. *Id.* In accordance with the BORRO, Merida opened a brokerage account and transferred the Shares. *Id.*, ¶ 26. Plaintiff claims that, in violation of the restriction in the BORRO, and unbeknownst to them, Defendant Fernane directed the brokerage to "immediately process[ ] a borrow transaction of 415,000 [] shares from Merida's [brokerage] account to another account in the name of Liqueous LP." *Id.*, ¶ 27.

In exchange for Merida retaining beneficial ownership of and legal title to the Shares, with the option to "repurchase" the Shares upon the BORRO's expiration, "Merida agreed to make four equal premium payments (essentially interest payments) to Pacific Lion during the term of the BORRO, each in the amount of $13,099 for a sum of $52,398." *Id.*, ¶ 22. Merida alleges that Defendant Fernane "falsely represented" that Merida could "exercise its 'option' to repurchase the Shares by providing written notice of its election to Pacific Lion within thirty days of the expiration of the BORRO." *Id.*, ¶ 23.

On June 14, 2024, Plaintiff sought to exercise its contractual option to repurchase the Shares. *Id.*, ¶ 31. On or about July 9, 2024, "Merida's CFO returned the executed transfer instruction and provided confirmation that the

4

purchase price of $1,625,374 had been wired to Pacific Lion." *Id.*, ¶ 39. Upon receipt of the repurchase payment, Plaintiff alleges that Defendant Fernane became uncommunicative and evasive. *Id.*, ¶¶ 41-68.

"On November 18, 2024, Merida's counsel sent a letter to Fernane demanding confirmation that Fernane still held the Shares and evidence of concrete steps taken to effectuate return of the Shares before November 25." *Id.*, ¶ 91. In response, Fernane's counsel invoked the arbitration provisions of the BORRO. *Id.*, ¶ 93. To date, the Shares have not been returned to Merida. *Id.*, ¶ 6.

## LEGAL STANDARDS

### I. Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up). The FAA establishes that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order from the district court directing that "arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

"In accordance with the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' a court must resolve any doubts concerning

the scope of arbitrable issues 'in favor of arbitrability.'" *DiTella v. TransUnion, LLC*, 23 Civ. 11028 (KPF), 2024 WL 3594567, at *4 (S.D.N.Y. July 31, 2024) (citing *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)).

Courts consider two factors in determining whether a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotations and citations omitted). As to the first prong of the test, this is a question "governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

In deciding motions to compel arbitration, courts generally apply a similar standard to that applicable to a motion for summary judgment. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Courts must consider all relevant, admissible evidence submitted by the parties and draw all reasonable inferences in favor of the non-moving party. *Id.*

**II.    Motion to Transfer Venue**

District courts may transfer a civil case to another district if transfer would be in the interest of justice and benefit "the convenience of [the] parties and witnesses." 28 U.S.C. § 1404(a). "The burden of demonstrating that the action should be transferred to another district lies with the moving party, and the plaintiff's choice of forum should not be disturbed unless the balance of factors tips decidedly in favor of a transfer." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 449 (E.D.N.Y. 2013) (cleaned up). "[M]otions for transfer lie within the broad discretion

6

of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

## DISCUSSION

Presently before the Court is Defendants' motion to compel arbitration or, in the alternative, transfer this matter to the United States District Court for the Southern District of Florida for a decision on Defendants' motion to compel arbitration. ECF No. 29-1 ("Defs. Br.") at 2. There is no dispute that, if valid, the broad arbitration clause contained in the BORRO would encompass Plaintiff's claims against Pacific Lion. Instead, the focus of Plaintiff's opposition is on the existence of a valid arbitration agreement. Plaintiff challenges the arbitration clause on the grounds that it was procured by fraud. ECF No. 42 ("Opp'n Br.") at 7-10. Plaintiff further argues that, even if the arbitration clause was valid, it does not preclude their claims against non-signatories Fernane and Liqueous. *Id.* at 10-12. The Court concludes that the arbitration clause is valid and does preclude Plaintiff from proceeding with this action. The Court is nonetheless unable to compel arbitration, as the parties' chosen forum is Fort Lauderdale, Florida. Accordingly, the Court exercises its discretion to transfer this matter to the Southern District of Florida.

### I.    The Binding Arbitration Clause is Valid

To challenge the validity of an arbitration clause on the grounds that it was procured by fraud, the claim of fraud must be directed to "the inducement of the

7

arbitration clause itself." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Section 4 of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404. To the contrary, "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and . . . where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (quotations and citation omitted).

As the Second Circuit has explained, in order to meet this standard, a plaintiff must prove a "substantial relationship between the fraud or misrepresentation and the arbitration clause in particular." *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997). This "substantial relationship" requires more than a mere conclusory claim that the "arbitration clause is an element of the scheme to defraud"; it must include "particularized facts specific to the . . . arbitration clause which indicate how it was used to effect the scheme to defraud." *Garten v. Kurth*, 265 F.3d 136, 143 (2d Cir. 2001) (quotations omitted); *see also Campaniello*, 117 F.3d at 667. Such allegations must be specific the formation of the arbitration clause itself, such as allegations that the party was not made "aware of the content or import of the arbitration clause." *Campaniello*, 117 F.3d at 667.

8

In the instant case, Plaintiff argues that Fernane has a "history of specifically weaponizing arbitration agreements . . . to perpetually delay his victims' ability to obtain relief." Opp'n Br. at 5. Specifically, Plaintiff claims that, when previously accused of securities fraud in another case, Fernane executed a settlement agreement containing an arbitration clause. *Id.* at 9; *see also* Compl., ¶¶ 83-84. According to Plaintiff, Fernane immediately defaulted and moved to compel arbitration before FINRA. Opp'n Br. at 9. Fernane then refused to grant consent to proceed before FINRA, which was required because Liqueous was not a member of FINRA. *Id.* Fernane allegedly fired his counsel and engaged in other delay tactics to frustrate the arbitration proceedings. *Id.* at 9-10. Plaintiff contends that this evidence demonstrates that Fernane fraudulently induced them to agree to the arbitration clauses in the BORRO as a means of delaying them from being able to recover their stolen securities. *Id.*[1]

These allegations are not materially different, however, from the allegations found insufficient by the Second Circuit in *Campaniello*. In *Campaniello*, the plaintiffs had alleged that including an arbitration-in-Italy clause in the contract was part of the overall fraudulent scheme because it "would prevent plaintiffs from seeking redress in the New York courts where the remedies for fraud were more extensive than in an arbitration in Italy." 117 F.3d at 666. They further alleged

---

[1] Plaintiff has filed a motion for leave to file a Second Amended Complaint. ECF No. 46. The Court has considered the proposed pleading, which contains additional allegations regarding the "weaponization" of the arbitration clause. ECF No. 48-3, ¶¶ 107-113. These additional allegations do not alter the Court's analysis.

9

that they would not have agreed to the arbitration clause had they been aware of the defendants' fraudulent intentions. *Id.* The Second Circuit held that such allegations did not suffice to demonstrate fraud in the inducement of the arbitration clause itself. The Second Circuit reasoned that, if such a theory were accepted, "[s]ince there is no fraud or misrepresentation that relates directly to the arbitration clause, the District Court would have to determine whether the appellees defrauded appellants into . . . accepting a sham contract with an arbitration clause; in short, the District Court would have to adjudicate the entire fraud claim." *Id.* at 667.

The same applies here. "Plaintiff here, like the unsuccessful plaintiffs in *Campaniello Imports,* does not claim to have been misled as to the nature of the arbitration clause in the contract it signed . . . . Rather, plaintiff alleges essentially that the arbitration clause was included in furtherance of defendant's secret plan to breach the whole contract. Under *Campaniello Imports,* however, a general claim of contractual fraud is not enough by itself to require that a court rather than an arbitration panel pass on the validity of an arbitration clause." *Am. Contex Corp. v. ELTE*, No. 96 CIV. 1514 (MBM), 1997 WL 540813, at *1 (S.D.N.Y. Sept. 3, 1997); *see also Castro v. Marine Midland Bank, N.A.,* 695 F. Supp. 1548, 1551 n.1 (S.D.N.Y. 1988) (explaining that "plaintiff must demonstrate that whatever fraud occurred misled plaintiff as to the arbitration agreement itself").

Plaintiff does not allege that they were deceived as to the nature, scope, or provisions of the arbitration clause. Accordingly, the arbitration clause is enforceable.

## II. Non-Signatories Fernane and Liqueous Can Enforce the Terms of the Arbitration Clause Against Merida

Plaintiff's argument that Fernane and Liqueous, as non-signatories to the BORRO, cannot enforce the arbitration clause is equally unavailing. "Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir.2001)). "[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir.2008).

Fernane, as the Chief Executive Manager who executed the Agreement on behalf of Pacific Lion, *see* ECF No. 29-3, has a sufficiently close relationship with Pacific Lion as to be able to enforce the arbitration clause. "Courts in this and other

11

circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Campaniello Imports*, 117 F.3d at 668 (quotations and citation omitted); *see also Charity Folks Inc. v. Kim*, 757 F. Supp. 2d 378, 380 (S.D.N.Y. 2010) (holding that CEO could enforce arbitration clause where fraud claims asserted against defendant company and the company's CEO were nearly identical, and parties to the underlying contract understood that the CEO controlled the company).

Moreover, it is clear that the claims against Fernane and Liqueous are closely "intertwined" with the claims against Pacific Lion. Plaintiff alleges that Fernane orchestrated the fraudulent scheme "using his wholly owned entities Pacific Lion and Liqueous." Compl., ¶ 2. Pacific Lion and Liqueous are alleged to be mere "alter egos of Fernane." *Id.*, ¶ 99. Plaintiff claims that "Fernane is the manager of Pacific Lion and controls the entity such that it does not have an independent existence, and Pacific Lion is merely a façade for Fernane." *Id.*, ¶ 97. Courts routinely allow non-signatory defendants to invoke arbitration clauses where assertions of alter ego liability are at issue. *See, e.g.*, *Greene v. Kabbalah Ctr. Int'l, Inc.*, 625 F. Supp. 3d 3, 21 (E.D.N.Y. 2022); *Charity Folks Inc.*, 757 F. Supp. 2d at 380.

Plaintiff invokes *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481 (S.D.N.Y. 2003), *aff'd in part, vacated and remanded in part*, 388 F.3d 39 (2d Cir. 2004), for the proposition that a non-signatory defendant cannot enforce an arbitration clause where they are sued, not as an artifice to plead around the

clause, but because they are the "real culprits" of the alleged fraud. Opp'n Br. at 11. They further argue *Motorola Corp.* establishes that estoppel does not apply where the defendants have unclean hands. *Id*. *Motorola Corp.* is distinguishable from the present case, however. In *Motorola Corp.*, none of the named defendants were parties to the agreement containing the arbitration clause, nor did the defendants bear a close relationship to the parties to the agreement. 274 F. Supp. 2d at 505. There was thus no agreement between the parties to arbitrate in the first instance. In contrast, Pacific Lion is a party to the BORRO, and all three entities are alleged to be closely related, having an alter ego relationship with Fernane.

Moreover, the *Motorola* court's holding that the unclean hands doctrine barred defendants from relying upon estoppel principles to compel arbitration was not based on allegations in a complaint. *Id.* at 505-06. Rather, the district court had made extensive findings of bad faith conduct by the defendants both in connection with the underlying claims and before the court following years of litigation. *Id.* Allowing a plaintiff who pleads fraud in a complaint to preclude a defendant from invoking an otherwise valid and applicable arbitration clause would undermine the policy goals underlying the FAA.

### III. This Court Does Not Have the Authority to Compel Arbitration in a Foreign District

Having found that the binding arbitration clause in the BORRO precludes Plaintiff from pursuing this litigation, the question then becomes how to resolve this pending motion. The BORRO provides that the arbitration shall be held in

Fort Lauderdale, Florida, unless the parties agree otherwise. The Court lacks the authority to compel arbitration in a foreign district under Section 4 of the FAA.

Although "the Second Circuit has not decided the question of whether Section 4 precludes a district court from compelling arbitration outside of its district," *Law Offices of Joseph L. Manson III v. Aoki*, No. 19-CV-04392-LTS-GWG, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) (citation omitted), a number of courts in this District have held that the plain text of the FAA authorizes courts to compel arbitration only within their own districts, *see, e.g.*, *Citigroup Glob. Markets Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d 537, 542 (S.D.N.Y. 2014); *see also Ansari v. Qwest Commc'ns. Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("This majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4.").

"Section 4 of the FAA provides that any proceeding compelled under its authority 'shall be within the district in which the petition for an order directing such arbitration is filed.'" *Aoki*, 2020 WL 767466, at *4. Accordingly, "a district court lacks the authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995)

The Court agrees with this reading of the statute. Accordingly, this Court cannot compel arbitration in Fort Lauderdale, Florida.

14

### IV. Transferring this Matter to the Southern District of Florida is Appropriate

Plaintiff has not meaningfully opposed Defendants' request, in the alternative, to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Instead, Plaintiff makes a conclusory statement that the authority cited by Defendants, *Kasparov v. Ambit Texas, LLC*, 12-CV-3488 (WFK) (JO), 2016 WL 10749156 (E.D.N.Y. Mar. 10, 2016), is an outlier. Opp'n Br. at 14 n.13. The Court disagrees.

In deciding whether to transfer a case pursuant to Section 1404(a), courts generally consider "both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* at 63. A forum-selection clause must be "given controlling weight in all but the most exceptional cases." *Id.* (quotations and citation omitted).

"A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996). Accordingly, "[w]hen confronted with similar circumstances, other courts have transferred the case to a district where venue would be proper and where a court would have the authority to issue an order compelling arbitration consistent with the parties' agreement." *Hickey v. Smith*, 22-cv-02343 (TNM), 2023 WL 1991645, at *4 (D.D.C. Feb. 14, 2023) (quoting *Mitchell v. Craftworks Rests. & Breweries, Inc.*, No. 18-cv-

15

879 (RC), 2018 WL 5297815, at *12 (D.D.C. Oct. 25, 2018)).  This is because "'[a]rbitration clauses are manifestations of the parties' preferences as to a convenient forum and operate, 'in effect, [as] a specialized kind of forum-selection clause.'"  *Hickey*, 2023 WL 1991645, at *5 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630 (1985)).

Transfer of this matter to the Southern District of Florida would therefore serve the convenience of the parties and the interests of justice.

## CONCLUSION

Accordingly, the motion to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) is GRANTED.  The Clerk of Court is directed to transfer this case to the Southern District of Florida.

SO ORDERED.

Dated:  September 3, 2025
        New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge